UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL K. LASHBROOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. 2:15-cv-00206-JMS-MJD |
| | ) |
| GRACE COLLEGE & THEOLOGICAL SEMINARY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| GRACE COLLEGE & THEOLOGICAL SEMINARY, | ) |
| | ) |
| Cross Claimant, | ) |
| | ) |
| vs. | ) |
| | ) |
| INDIANA DEPARTMENT OF CORRECTION, | ) |
| | ) |
| Cross Defendant. | ) |

**ORDER**

Plaintiff Daniel Lashbrook has been incarcerated at Miami Correctional Facility ("Miami") from at least April 2014 to the present. Defendant Grace College & Theological Seminary ("Grace") had a contract with the Indiana Department of Correction ("IDOC") to administer educational programs, including GED programs, in IDOC facilities including Miami. Under the contract, Grace was required to devote its best efforts to utilize criminal offenders as teaching assistants or tutors. While incarcerated at Miami, Mr. Lashbrook was hired as a teaching assistant/tutor for Grace, receiving $0.25 per hour for his work. He initiated this action against several entities and individuals alleging violations of the Fair Labor Standards Act's ("FLSA") minimum wage provision, the Indiana Prevailing Wage Statute, and 42 U.S.C. § 1983. After the Court granted a previous motion to dismiss several former defendants, partially granted a motion

1

to dismiss another former defendant (who subsequently settled the remaining claims against it), and Mr. Lashbrook abandoned a claim against Grace, the only claims remaining in this litigation are Mr. Lashbrook's claim against Grace under the FLSA's minimum wage provision, and a cross-claim Grace has asserted against IDOC for indemnification. Presently pending before the Court is Grace's Motion for Summary Judgment. [Filing No. 78.]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those

facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following statement of facts was evaluated pursuant to the standards set forth above:[1]

---

[1] In its brief in support of its motion, Grace states that "[a]lthough [it] disagrees with much of Plaintiff's version of the facts, for purposes of this motion only, Grace will assume that all properly alleged facts in Plaintiff's [Amended] Complaint are true." [Filing No. 79 at 1.] Accordingly, many of the Court's factual citations are to the Amended Complaint.

3

At all times relevant to the claims that remain in this matter, Mr. Lashbrook has been incarcerated at Miami. [Filing No. 31 at 4.] Grace is a private university located in Winona Lake, Indiana. [Filing No. 31 at 3.] Grace has a contract with IDOC to "administer educational programs, including the GED programs, in IDOC facilities, including [Miami]," to IDOC inmates. [Filing No. 31 at 4.]

Specifically, IDOC's contract with Grace requires Grace to provide licensed instructors for the courses it offers, one Site Manager, and one Administrative Assistant at Miami. [Filing No. 79-2 at 6-7.] While nothing in the contract requires Grace to use tutors, [Filing No. 108-2 at 2], the contract does require Grace to "devote its best efforts in implementing the concept of literacy tutors in adult facilities to support licensed teachers in the classroom…. These opportunities are subject to review and approval by IDOC staff…." [Filing No. 79-2 at 8.] Grace's Dean of the School of Professional & Online Education, Timothy Ziebarth, states that IDOC wants inmates to be "literacy tutors" so that they are kept occupied and out of trouble, and develop skills as part of their rehabilitation. [Filing No. 79-1 at 2.] Additionally, he states that "[i]f IDOC did not require the use of inmates as tutors, Grace would not do so on its own." [Filing No. 79-1 at 2.]

Some instructors at Miami have tutors, but not all do. [Filing No. 108-1 at 6-7.] When offenders wish to become tutors, they fill out an application form, and Grace reviews the applications and brings certain applicants in for an interview. [Filing No. 108-1 at 6.] The instructor that would like to have a tutor, along with the Director of Education at Miami, Timothy Van Duyne, select one or two offenders to be considered for the position. [Filing No. 108-1 at 1-2.] The final applicants are then submitted to Miami, and Miami determines whether the inmate applicants are in good standing and whether they may be a tutor. [Filing No. 108-1 at 6.]

On April 20, 2015, Mr. Lashbrook was hired as a tutor for Catherine Cook, one of the teachers at Miami who is employed by Grace and teaches adult basic education classes three times per day.[2] [Filing No. 108-3 at 2; Filing No. 108-3 at 4-5.] Tutors generally run copies when the instructor requests, grade homework, assist other students, and perform other duties assigned at the discretion of the instructor. [Filing No. 108-1 at 7-9; Filing No. 108-3 at 5-6.] As to his tutor position with Grace, Mr. Lashbrook alleges (and Grace accepts as true) that: (1) he was hired or employed by Grace staff or a Grace employee; (2) the staff or employees of Grace were not obligated to hire or employ him; (3) at no time was he compelled or required to work as a teaching assistant/tutor "based on the terms and conditions of his incarceration or sentence in the underlying conviction"; (4) he was supervised by Grace staff or employees; (5) his performance as a teaching assistant/tutor was reviewed by Grace staff or an employee of Grace; (6) he was retained and continued to be employed at the decision of Grace staff or employees; (7) Grace staff or employees had the ability to fire or terminate him without approval or input from IDOC; (8) Grace staff or employees controlled his work schedule and conditions of employment without approval or input from IDOC, and his work schedule was mainly dictated by Grace's academic calendar; and (9) Grace staff or employees directed Mr. Lashbrook what to do while working as a teaching assistant/tutor. [Filing No. 31 at 5-7.]

Tutors are paid only after their timesheet is signed by the instructor and submitted to Miami personnel. [Filing No. 108-1 at 8.] The contract between IDOC and Grace did not require that offenders be paid the prevailing wage under Ind. Code § 11-10-7-1, *et seq.* [Filing No. 31 at

---

[2] Mr. Lashbrook alleges in the Amended Complaint that he became a tutor for Grace on April 20, 2014, [Filing No. 31 at 6], and this is the date the Court referenced in earlier orders on motions to dismiss filed by other, former defendants. It appears this may have been a typographical error in the Amended Complaint, as Mr. Lashbrook now states in his Affidavit that he reported to Ms. Cooke's class to assume his tutor position on April 20, 2015. [Filing No. 108-4.]

5

8.] Mr. Lashbrook was paid $0.25 per hour as a teaching assistant/tutor. [Filing No. 31 at 8.] On July 13, 2016, during briefing of the pending motion, Mr. Lashbrook was terminated from his position as a tutor by Mr. Van Duyne. [Filing No. 108-4 at 1.]

Mr. Lashbrook filed his initial Complaint on July 6, 2015, [Filing No. 1], and the operative Amended Complaint on September 10, 2015, [Filing No. 31]. After all other defendants either prevailed on motions to dismiss or settled with Mr. Lashbrook, the claims that remained in this litigation against Grace were Mr. Lashbrook's claims for: (1) violation of the FLSA's minimum wage provision; and (2) violation of Indiana's Prevailing Wage Statute. [Filing No. 31 at 9-10.] Grace moved for summary judgment on both of Mr. Lashbrook's claims, and Mr. Lashbrook advised in a Statement of Claims filed after Grace's motion that he "does not intend to assert his claim under Indiana's prevailing wage statute (Ind. Code § 11-10-7-3(a)) (Count 3)." [Filing No. 91 at 1.] Thus, his Prevailing Wage Statute claim is dismissed, and the portion of Grace's Motion for Summary Judgment relating to that claim is denied as moot. The Court will now consider the motion as it relates to Mr. Lashbrook's FLSA claim.

### III.
### DISCUSSION

In connection with Mr. Lashbrook's FLSA claim, Grace argues that "a prisoner working inside a prison, whose work does not create a risk of unfair competition in commerce, does not fall within the purview of the [FLSA]." [Filing No. 79 at 5 (emphasis omitted).] It contends that requiring prisoners to be paid the minimum wage under the FLSA would not further the two purposes of the FLSA – to "'correct labor conditions that are 'detrimental to the minimum standard of living necessary for health, efficiency, and general well-being of workers''" and "'to prevent unfair competition in commerce from the use of underpaid labor.'" [Filing No. 79 at 5 (quoting *Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992).] Grace argues that it operates educational

classes within the prison to provide educational opportunities for inmates, and is not producing goods that will be sold on the open market outside the prison. [Filing No. 79 at 7.] Accordingly, it argues, it "derived no unfair economic advantage from tutors such as [Mr.] Lashbrook." [Filing No. 79 at 7.] Grace notes that the literacy tutor program was implemented by IDOC to keep inmates occupied and out of trouble, and to develop skills as part of their rehabilitation. [Filing No. 79 at 7.] Because tutors like Mr. Lashbrook were not given the position so that they could make a living, Grace argues that the FLSA should not apply to them. [Filing No. 79 at 8.]

Mr. Lashbrook responds by attempting to distinguish cases relied upon by Grace, and citing cases from outside the Seventh Circuit which hold that "'the FLSA applies to prisoners working for private companies under work-release programs.'" [Filing No. 108 at 11.] Mr. Lashbrook agrees that the first purpose of the FLSA – to alleviate labor conditions that are detrimental to the necessary minimum standard of living – does not apply to his situation. [Filing No. 108 at 14.] He argues, however, that the second purpose – to prevent unfair competition in commerce – does apply because "where the prisoner works inside the prison for an outside entity, there is potential for upsetting the desired equilibrium among workers in job markets outside the prison." [Filing No. 108 at 14.] Mr. Lashbrook asserts that while Grace analyzes the issue from the perspective of what product it is providing (education), the proper focus is "how [he] and other tutors affect [Grace's] ability to provide the product." [Filing No. 108 at 15.] Mr. Lashbrook argues that the FLSA sets forth an extensive list of workers who are exempted from FLSA coverage, and prisoners are not on that list. [Filing No. 108 at 15.] He contends that genuine issues of fact exist regarding whether "the economic realities indicate that [he] is an employee of [Grace]." [Filing No. 108 at 16.] He argues that the economic reality test articulated in *Bonnette v. California Health and Welfare Agency*, 704 F.3d 1465, 1470 (9th Cir. 1983), should be applied, which considers which

7

entity had and exercised power to hire and fire Mr. Lashbrook (he argues Grace did); which entity supervised and controlled his work schedule and conditions of employment (he argues Grace did); which entity determined his rate of pay (he argues IDOC did, but that Grace had to approve his timesheets before they were submitted to Miami for payment); and which entity maintained employment records (he concedes that Grace did not). [Filing No. 108 at 16-18.]

Grace did not file a reply brief.

Under the FLSA, "[e]very employer" must pay "his employees" a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Section 203(g) defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). This results in the "unhelpful and circular" principle that "to qualify as an employee for purposes of the FLSA, one must perform 'work' for an 'employer.'" *Berger v. National Collegiate Athletic Association*, --- F.3d ----, 2016 WL 7051905, *2 (7th Cir. 2016). The FLSA does not define "work." *Id.* In determining whether an individual is an employee for purposes of the FLSA's minimum wage provision, the Seventh Circuit has specifically rejected the application of multi-factor tests and taken a more flexible approach, looking instead at the economic reality of the situation as a whole. *Id.* at *2-3. The plaintiff bears the burden of establishing that his or her employer violated the FLSA. *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016) ("an employee who brings suit pursuant to FLSA has the burden of proving that he performed work for which he was not properly compensated") (citation and quotation omitted).

Mr. Lashbrook concedes that the FLSA does not cover prisoners who work inside a prison, for a state correctional institution. [*See* Filing No. 108 at 14 (Mr. Lashbrook acknowledging that the Seventh Circuit Court of Appeals has recognized that "'[t]he courts have not extended the

8

FLSA's definition of 'employee' to cover prisoners who are assigned to work within the prison walls for the prison") (emphasis omitted).] Indeed, the Seventh Circuit has found this to be the case, along with numerous district courts within this circuit. *See, e.g.*, *Douglas v. Aramark*, 2009 WL 4728686 (S.D. Ind. 2009) ("The common claim presented by the plaintiffs is the tired contention that inmates are entitled to wages prescribed under the [FLSA].... Th[is] contention[ ] [has] been authoritatively rejected"); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) ("Prison and jail inmates are not covered by the FLSA"); *Vanskike v. Peters*, 974 F.2d 806, 809-10 (7th Cir. 1992) (prisoner who worked for state prison while incarcerated was not covered by the FLSA).

In *Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005), the Seventh Circuit provided a detailed discussion of why prisoners are not considered employees of the prison in which they are incarcerated. There, inmates of a private prison that was under contract with the Wisconsin Department of Correction claimed that they were entitled to be paid minimum wage under the FLSA for their work. The Seventh Circuit rejected their contention, stating:

> The [FLSA] is intended for the protection of employees, and prisoners are not employees of their prison, whether it is a public or a private one. So they are not protected by the Act.... Oddly, this is so only because of presumed legislative intent and not because of anything in the actual text of the FLSA. The Act unhelpfully defines "employee" as "any individual employed by an employer" and defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency.".... There are some excepted classes of employees..., but prisoners are not among them. Although the minimum wage provision of the Act applies only to employees engaged in, or producing goods for, commerce or employed in an enterprise engaged in or producing goods for commerce..., we do not know whether [plaintiffs] were engaged in any such activities.
>
> But we have no doubt that the cases we have cited are correct. People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to

9

> crime outside. None of these goals is compatible with federal regulation of their wages and hours. The reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress.

*Id.* at 409-10.

The facts here are slightly different than *Bennett* and other cases within the Seventh Circuit dealing with the issue of whether prisoners are covered by the FLSA. Here, it is undisputed that Mr. Lashbrook was a tutor for Grace – a private entity – and not for Miami or IDOC. Mr. Lashbrook seizes on that distinction, and on the Seventh Circuit's statement in *Bennett* that "[w]e have no quarrel with *Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990), or *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), which hold that the FLSA applies to prisoners working for private companies under work-release programs. Those prisoners weren't working as prison labor, but as free laborers in transition to their expected discharge from the prison." *Bennett*, 395 F.3d at 410. Although *Watson* and *Carter* are from outside the Seventh Circuit and are not binding precedent on this Court, the Court notes that both cases are inapposite in any event.

In *Watson*, plaintiffs were inmates who had been classified as "trusties," meaning that they qualified for a work release program where they "were allowed to work outside the jail for private individuals or companies." *Watson*, 909 F.2d at 1551. The plaintiffs were assigned to work for the Sheriff's daughter and son-in-law, who operated an unincorporated construction business and picked plaintiffs up from the jail for work, were responsible for plaintiffs' actions while they were with them, and sometimes kept them away from the jail for 12-13 hours a day. *Id.* The Fifth Circuit Court of Appeals concluded that plaintiffs were employees of the construction company, and covered by the FLSA's minimum wage provision. *Watson* is significantly distinguishable from this case. Unlike the plaintiffs there, Mr. Lashbrook was not leaving Miami to work, his

10

work related to assisting Miami inmates, and control over his conduct and whereabouts was not handed over to Grace.

The facts in *Carter* align more closely with this case, but there are still significant differences. The plaintiff in *Carter* was an inmate at a New York state correctional facility, and participated in a program conducted by Dutchess Community College ("DCC") whereby DCC employed inmates to act as teaching assistants to DCC staff who taught college-level courses at the correctional facility. 735 F.2d at 10. The program was initiated by DCC, who proposed the arrangement to the New York State Department of Correctional Services, suggested that it supplement inmates' prison wages, and conducted a screening process to find qualified inmates. *Id.* DCC then submitted the list of inmate applicants it recommended to the Department of Correctional Services, which either approved or rejected the applicants. *Id.* The court in *Carter* applied the multi-factor "economic reality" test that Mr. Lashbrook requests this Court use, and found summary judgment for DCC was inappropriate because "the fact that [plaintiff] is a prison inmate does not foreclose his being considered an employee for purposes of the minimum wage provisions of the FLSA." *Id.* at 14. It focused on the following facts: "DCC made the initial proposal to 'employ' workers; suggested a wage as to which there was 'no legal impediment'; developed eligibility criteria; recommended several inmates for the tutoring positions; was not required to take any inmate it did not want; decided how many sessions, and for how long, an inmate would be permitted to tutor; and sent the compensation directly to the inmate's prison account." *Id.*

While *Carter* is factually similar, the Court notes some important differences. The work program in *Carter* originated with DCC, which made the initial proposal to employ inmates. Here, while the contract between IDOC and Grace does not require Grace to utilize inmates as tutors, it

11

requires Grace to "devote its best efforts in implementing the concept of literacy tutors in adult facilities to support licensed teachers in the classroom." [Filing No. 79-2 at 8.] At the least, this shows that IDOC strongly encouraged Grace to use inmates as tutors. Moreover, Grace's Dean of the School of Professional & Online Education stated that "IDOC desires inmates to be 'literacy tutors' for the purposes of keeping inmates occupied, out of trouble, and developing skills as part of their rehabilitation. If IDOC did not require the use of inmates as tutors, Grace would not do so on its own." [Filing No. 79-1 at 2.] Mr. Lashbrook does not present evidence contradicting those statements.

  Further, the main difference with *Carter* is that the Second Circuit applied a multi-factor "economic reality test" to determine whether plaintiff was an employee for purposes of the FLSA. *Carter*, 735 F.2d at 13. It considered "whether the alleged employer could hire and fire the worker, control work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records." *Id.* The Seventh Circuit has specifically declined to apply "multifactor tests" such as the "economic reality test" set forth in *Bonnette*, 704 F.2d 1465, applied in *Carter*, and discussed by Mr. Lashbrook, when the test "'fail[s] to capture the true nature of the relationship' between the alleged employee and the alleged employer." *Berger*, 2016 WL 7051905 at *3 (quoting *Vanskike*, 974 F.2d at 809). In the prison setting, the Seventh Circuit has declined to apply the multi-factor test set forth in *Bonnette* because it is "not the most helpful guide in the situation presented…." *Vanskike*, 974 F.2d at 809. Instead, the Seventh Circuit uses a "more flexible standard" of determining "the economic reality of the alleged employment relationship" as a whole, without considering a rigid set of factors. *Berger*, 2016 WL 7051905 at *2-3.

  The Court does not find it significant that Grace is a private entity, rather than a public one – the record evidence indicates that Grace was assisting IDOC in administering a program that

would keep prisoners busy and allow them to gain some experience that would help them when their incarceration ended, and that Grace would not have utilized inmates as tutors but for IDOC's program. [*See* Filing No. 79-1 at 2 (Grace's Dean of the School of Professional & Online Education stating "[i]f IDOC did not require the use of inmates as tutors, Grace would not do so on its own initiative").] And even if the contract between IDOC and Grace did not require Grace to use inmate tutors, it strongly encouraged Grace to do so. [Filing No. 79-2 at 8 (contract between Grace and IDOC requiring Grace to "devote its best efforts in implementing the concept of literacy tutors in adult facilities to support licensed teachers in the classroom").] The economic reality here indicates that Mr. Lashbrook is not an employee of Grace for purposes of the FLSA. *See Danneskjold v. Hausrath*, 82 F.3d 37, 39 (2d Cir. 1996) (holding that inmate who was a tutor/assistant for college classes offered by private college within state prison was not an employee of college under the FLSA, and stating "the FLSA does not apply to prison inmates in circumstances in which their labor provides services to the prison, whether or not the work is voluntary, whether it is performed inside or outside the prison, and whether or not a private contractor is involved. Because [plaintiff] worked in an education program that provided rehabilitative services only to inmates, he was not an employee for purposes of the FLSA").[3]

Additionally, considering Mr. Lashbrook to be an employee entitled to the FLSA's minimum wage protections would not further the only purpose of the FLSA potentially at play in this litigation – to prevent unfair competition in commerce. Grace has presented evidence that it

---

[3] The Court rejects Mr. Lashbrook's argument that Congress would have included prisoners in its "list of workers who are exempted expressly from FLSA coverage" if it intended to exempt them, and "'prisoners' have never been added to the list of exempt workers, even in the face of years and years of litigation involving prisoners claiming entitlements under the FLSA." [Filing No. 108 at 15.] As the Seventh Circuit noted, "[t]he reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress." *Bennett*, 395 F.3d at 410.

would not use inmate tutors if it were not encouraged to do so by IDOC, [*see* Filing No. 79-1 at 2], so it is not gaining any competitive advantage by paying Mr. Lashbrook less than minimum wage.  The evidence indicates that if Grace were not utilizing Mr. Lashbrook or other inmates, it simply would not utilize tutors to assist its instructors.

In sum, Mr. Lashbrook is not considered an employee under the FLSA, is not protected by the minimum wage provision of the FLSA, and his FLSA minimum wage claim fails as a matter of law.  Grace's Motion for Summary Judgment is granted as to Mr. Lashbrook's FLSA claim.

### IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Grace's Motion for Summary Judgment, [Filing No. 78], as to Mr. Lashbrook's FLSA claim, and **DENIES AS MOOT** the Motion for Summary Judgment, [Filing No. 78], as it relates to Mr. Lashbrook's claim under Indiana's Prevailing Wage Statute.

The only claim remaining in this litigation is Grace's cross-claim against IDOC for indemnity.  Because no claims remain against Grace, the Court assumes that Grace will not be pursuing its cross-claim.  The Court **ORDERS** Grace, however, to file a Report by **December 21, 2016** advising the Court of its intentions regarding its cross-claim against IDOC.  Final judgment shall enter when that issue is resolved.

Date: 12/15/2016

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**